IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-01831-NYW-CYC

EVERTT HURTADO,

     Plaintiff,

v.

OWN.LEASE, INC.,

     Defendant.

---

### ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Cyrus Y. Chung, United States Magistrate Judge.**

     Defendant Own.Lease, Inc. moves to compel plaintiff Evertt Hurtado to bring his claims in arbitration rather than in court, citing an arbitration clause in the parties' lease purchase agreement. ECF No. 51. Because the arbitration clause is enforceable and encompasses the plaintiff's claims, the Court recommends that the Motion be **GRANTED**. The plaintiff seeks to strike the arbitration clause, ECF No. 55, but that motion is **DENIED** for the same reasons. The plaintiff also seeks leave to file two surreplies, ECF Nos. 62, 82, but they neither comport with the proper purpose of a surreply nor comply with this Court's Local Rules and, as such, leave is **DENIED**.

### BACKGROUND

     On November 25, 2024, the plaintiff applied online for a lease purchase agreement for new tires from the defendant, who provides lease-to-own services. ECF No. 51-2 ¶¶ 3–4; *see* ECF No. 1 at 2. The defendant approved the application, and both parties executed the lease purchase agreement (the "Contract") online via DocuSign. *See* ECF No. 51-2 ¶¶ 5–6; ECF No.

51-3. The Contract contained a jury trial waiver and arbitration clause (the "Clause") expressed

in a question-and-answer format. ECF No. 51-3 at 9–10. In brief, the Clause provided that the

parties waived their right to go to court and instead would pursue arbitration for any claims that

involved the parties or the subject of the Contract, though the Clause preserved the ability to

bring claims worth less than $20,000 in small-claims court.

According to the plaintiff, four months later, the defendant withdrew funds from his bank

account without authorization; moreover, he says, it signed the Contract without a valid

operating license. ECF No. 13 at 3–4. The plaintiff then filed this action, asserting five claims

against the defendant and seeking damages of $500,000. *Id.* at 4–5.

These motions followed. ECF Nos. 51, 55, 62, 82.

## ANALYSIS

The defendant moves to compel arbitration. The Federal Arbitration Act ("FAA") makes

a "written provision in any . . . contract evidencing a transaction involving commerce to settle by

arbitration a controversy thereafter arising out of such contract or transaction . . . valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract." 9 U.S.C. § 2. "A party aggrieved by the alleged failure, neglect, or

refusal of another to arbitrate under" such an agreement 'may petition any United States district

court which, save for such agreement, would have jurisdiction under title 28, in a civil action . . .

of the subject matter of a suit arising out of the controversy between the parties, for an order

directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4.

"By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but

instead mandates that district courts shall direct the parties to proceed to arbitration on issues as

to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470

U.S. 213, 218 (1985).

"A court addressing a motion to compel arbitration . . . must first determine whether there

exists an enforceable agreement to arbitrate." *Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th

823, 832 (10th Cir. 2023). Then, a court must "determine such matters as 'who is bound by' the

agreement, and . . . whether the 'agreement covers a particular controversy.'" *Id.* (quoting *Arthur

Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009), and *Rent-A-Center, W., Inc. v. Jackson*, 561

U.S. 63, 69 (2010)). In considering these elements, a court "should apply ordinary state-law

principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S.

938, 944 (1995) (citation omitted).

Addressing these questions follows "a summary trial procedure." *Howard v. Ferrellgas

Partners*, 748 F.3d 975, 978 (10th Cir. 2014). When "the making of the agreement for arbitration

or the failure to comply therewith is not in issue, the court shall make an order directing the

parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

But "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the

same be in issue, the court shall proceed summarily to the trial thereof." *Id.* "This 'framework is

similar to summary judgment practice': the party moving to compel arbitration bears the initial

burden of presenting evidence sufficient to demonstrate the existence of an enforceable

agreement and the opposing party's failure, neglect, or refusal to arbitrate . . . ." *BOSC, Inc. v.

Bd. of Cnty. Comm'rs of Cnty. of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017) (quoting

*Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012)). "[I]f it does so, the

burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the

existence of an agreement or the failure to comply therewith." *Id.* Thus, "[w]hen 'a quick look at

the case' reveals that 'no material disputes of fact exist,' a district court may 'decide the

arbitration question as a matter of law through motions practice and viewing the facts in the light

most favorable to the party opposing arbitration.'" *Id.* (quoting *Howard*, 748 F.3d at 978).

No such disputes exist here. Regarding the existence of an enforceable agreement to

arbitrate, for example, the defendant points to the executed Contract and the Clause therein

indicating an agreement to arbitrate. ECF No. 51-3. And the plaintiff does not contest these facts.

Instead, he contends that the Clause is an unconscionable contract provision. "In order to

support a finding of unconscionability, there must be evidence of some overreaching on the part

of one of the parties such as that which results from an inequality of bargaining power or under

other circumstances in which there is an absence of meaningful choice on the part of one of the

parties, together with contract terms which are unreasonably favorable to that party." *Davis v.*

*M.L.G. Corp*, 712 P.2d 985, 991 (Colo. 1986). In Colorado, seven factors guide such an analysis:

(1) the use of a standardized agreement executed by parties of unequal bargaining power; (2) the

lack of an opportunity for the customer to read or become familiar with the document before

signing it; (3) the use of fine print in the portion of the contract containing the provision in

question; (4) the absence of evidence that the provision was commercially reasonable or should

reasonably have been anticipated; (5) the terms of the arbitration clause, including substantive

fairness; (6) the relationship of the parties, including factors of assent, unfair surprise, and notice;

and (7) the circumstances surrounding the formation of the contract, including setting, purpose,

and effect. *See id.* (citations omitted); *see also Fedor v. United Healthcare, Inc.*, 976 F.3d 1100,

1105 (10th Cir. 2020) ("For federal courts to review" a claim of arbitrability or fraud in the

inducement, "the claim must be directed at the 'arbitration clause itself.'" (quoting *Prima Paint*

*Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403 (1967)); *Turner v. Chipotle Mexican*

*Grill, Inc.*, No. 14-CV-02612-JLK, 2018 WL 11314701, at *4 (D. Colo. Aug. 3, 2018) (noting that the "fifth *Davis* factor[] . . . examine[s] whether the Arbitration Agreement['s] . . . terms are substantively fair"). The first, second, third, sixth, and seventh factors relate to procedural unconscionability; the fourth and fifth relate to substantive unconscionability. *Turner*, 2018 WL 11314701, at *3–4. The plaintiff, as the party opposing the Clause's enforcement, bears the burden of establishing both its procedural and substantive unconscionability. *Id.* at *2 (citing *Nesbitt v. FCNH, Inc.*, 74 F. Supp. 3d 1366, 1371 (D. Colo. 2014), *aff'd*, 811 F.3d 371 (10th Cir. 2016)). "[T]he finding of unconscionability is a question of law." *Mullan v. Quickie Aircraft Corp.*, 797 F.2d 845, 849 (10th Cir. 1986).

The plaintiff fails to carry his burden. He makes no argument, for example, on the first factor. An overview of the Agreement shows that it is a standardized agreement between parties with unequal bargaining power. ECF No. 51-3. While this factor weighs in favor of the plaintiff, this alone is not enough to find that the Agreement is unconscionable. *Nesbitt*, 74 F. Supp. 3d at 1371 (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346–47 (2011)).

Nor does the plaintiff address the second factor, his lack of an opportunity to read or become familiar with the Contract, in his response. Nevertheless, "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers," *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and, so construed, there is an argument in the plaintiff's separate motion to strike the Clause that he was confused and under pressure to obtain tires for his girlfriend. ECF No. 55 at 6. But "[a]bsent fraud or concealment, a person who signs a document is presumed to have knowledge of the document's contents, independent of whether that person has read the document." *Breaux v. Am. Fam. Mut. Ins. Co.*, 387 F. Supp. 2d 1154, 1162 (D. Colo. 2005). So it is here: regardless of the pressure the plaintiff

faced, the plaintiff's signature imputes to him knowledge of the Contract's contents. *See Levine v. Vitamin Cottage Nat. Food Mkts., Inc.*, No. 20-CV-00261-STV, 2021 WL 4439800, at *17 (D. Colo. Sept. 27, 2021) (citing *Axis Venture Grp., LLC v. 1111 Tower, LLC*, No. 09-CV-01636-PAB-KMT, 2010 WL 1278306, at *4 (D. Colo. Mar. 30, 2010)). This factor, then, weighs against an unconscionability finding.

As for the third factor, the plaintiff asserts that the Clause was buried in the Contract and in fine print. ECF No. 55 at 6; ECF No. 58 at 1. It was not. The Contract's font size is the same throughout, *see* ECF No. 51-3 at 8–11, and the Clause was "in normal print consistent with other clauses in the contract," weighing against finding it unconscionable. *Rocky Mountain Chocolate Factory, Inc. v. SDMS, Inc.*, No. 06-cv-01212-WYD-BNB, 2007 WL 4268962, at *7 (D. Colo. Nov. 30, 2007). Indeed, the Clause spans three pages of questions and answers, ECF No. 51-3 at 8–11, evincing no attempt to hide the ball. Accordingly, this factor weighs against finding that the Clause is unconscionable.

The plaintiff's arguments on factors four and five, the substantive-unconscionability factors, focus on his lawsuit's principal grievances: unauthorized withdrawals, the changing of payment terms, and the defendant's inflexibility. But when faced with an agreement to arbitrate, "a court is not to rule on the potential merits of the underlying claims." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Moreover, the arguments are far afield from the relevant inquiry here for the fourth factor — whether the Clause was unreasonable or uncommon in rent-to-own contracts. *See Jajack v. N.Y. Life Ins. Co.*, No. 20-CV-01590-MEH, 2020 WL 8269316, at *5 (D. Colo. Dec. 28, 2020). Accordingly, the fourth factor weighs against finding that the Clause is unconscionable.

Nor do the plaintiff's arguments bear on the fifth factor of the Clause's unfairness. The plaintiff adds an allusion to his financial circumstances in his motion to strike, ECF No. 55 at 6, but the Clause provides that the defendant will front the cost of arbitration, albeit with some potential for repayment if the plaintiff does not prevail in arbitration. ECF No. 51-3 at 11. As such, from a financial standpoint, the Clause is not unfair. *See Jajack*, 2020 WL 8269316, at *5–6 (concluding that defendant's "acceptance of responsibility for the full arbitration fee" mooted argument relating to substantive unfairness). To the extent the plaintiff asserts unfairness because the Clause precludes a jury trial, *see* ECF No. 55 at 7, "arbitration 'necessarily waives jury trial,' [and a] conclusion that this case [is] properly referred to arbitration undercuts [an] objection that" a party is "wrongly denied a jury trial." *Hicks v. Cadle*, 436 F. App'x 874, 879 n.2 (10th Cir. 2011) (quoting *Harington v. Atl. Sounding Co.*, 602 F.3d 113, 126 (2d Cir. 2010)). Accordingly, the fifth factor weighs against finding that the Clause is unconscionable.

As for the sixth factor, the factors of assent, unfair surprise, and notice all weigh in the defendant's favor. Assent, for example, is demonstrated by the plaintiff's signed initials throughout the Contract and signature at the end of the Contract. ECF No. 51-3 at 1–12. There was no unfair surprise in the Clause: the pressure to obtain tires for his girlfriend does not make the three-page Clause a surprise. Indeed, regardless of whether the plaintiff reviewed the Contract before signing it, he had sixty days thereafter to opt out of the Clause. ECF No. 51-3 at 11. Notice, then, also weighs in the defendant's favor. The plaintiff protests that he did not receive an email alerting him of his approval or a clearer explanation of the defendant's involvement, ECF No. 55 at 5, but he points to nothing requiring such an alert or elaboration for notice to be sufficient. Accordingly, this factor weighs against finding that the Clause is unconscionable.

The seventh and final factor "is a catchall that allows for consideration of all of the factors surrounding formation of the contract." *Nesbitt*, 74 F. Supp. 3d at 1372. The plaintiff argues that the Clause had to be in a separate document, but "there is no legal requirement that the [arbitration] provision be a stand-alone document." *McCoy v. Cintas, Inc.*, No. 1:13-CV-134, 2013 WL 2620201, at *3 (S.D. Ohio June 11, 2013). Accordingly, the seventh factor weighs against finding that the Clause is unconscionable.

In sum, the plaintiff failed to demonstrate that the Clause is unconscionable. The first element is satisfied.

The plaintiff pivots. The Contract itself, he says, is invalid because it charges a usurious interest rate, omitted a disclosure of a 50.7% annual percentage rate, came from a company operating without a proper license, and was accompanied by the conduct of withdrawing funds from his account without prior approval. ECF No. 58 at 1–8. But "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006), and "a court is not to rule on the potential merits of the underlying claims." *AT&T*, 475 U.S. at 649. Accordingly, the plaintiff must address these concerns with the arbiter.

As to the second element, whether the Clause binds the parties and covers this case, the Contract is between the parties, and the Clause defines "disputes" as having the "broadest possible meaning." Such a definition allows for the "presumption of arbitrability" to apply here, *AT&T Techs.*, 475 U.S. at 650; *see ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995), and the disputes at issue here appear to arise directly out of the Contract. Nor does the plaintiff contend otherwise. Accordingly, the second element is satisfied.

If both elements are satisfied, then section 3 of the FAA obligates courts to stay litigation on matters that the parties have agreed to arbitrate. 9 U.S.C. § 3. As the parties have a valid and enforceable Clause that encompasses the plaintiff's claims, the Court must stay this action pending arbitration. *See id.* But given that administrative closure is "the practical equivalent of a stay," *Quinn v. CGR*, 828 F.2d 1463, 1465 n.2 (10th Cir. 1987), the Court recommends administrative closure.

That addresses the issues properly before the Court.

The plaintiff submits additional argument in two proposed surreplies, ECF Nos. 62, 82, but courts generally permit a surreply only when a party includes new material for the first time in a reply brief. *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005). The defendant did not do so. And the plaintiff's proposed surreplies, ECF No. 62 at 3; ECF No. 82 at 3, simply seek to bolster his earlier arguments. There is no reason, then, to permit them here.

Moreover, as the Court has explained previously, *see* ECF Nos. 23, 27, pursuant to D.C.COLO.LCivR 7.1(a), the moving party must "confer or make reasonable, good faith efforts to confer with any opposing counsel or unrepresented party to resolve any disputed matter" before filing a motion. The plaintiff did not do so: indeed, his Local Rule 7.1(a) certification referenced a conferral occurring before the defendant's reply was ever filed. This cannot suffice for conferral as to whether a surreply should be permitted. As such, the Court does not consider the plaintiff's surreplies.

## **CONCLUSION**

For the foregoing reasons, the Court

1. **RECOMMENDS** that the Motion to Compel Arbitration, ECF No. 51, be

**GRANTED** and that the case be **ADMINSTRATIVELY CLOSED**;

2. **ORDERS** that the Motion to Strike the Arbitration Agreement, ECF No. 55, be

   **DENIED**;

3. **ORDERS** that the Plaintiff's Motion for Leave to File Supplemental Brief in Support

   of Plaintiff's Response to Defendant's Motion to Compel Arbitration, ECF No. 62, be

   **DENIED**; and

4. **ORDERS** that the Plaintiff's Motion for Leave to File Sur-Reply to Defendant's

   Reply in Support of Motion to Compel Arbitration, ECF No. 82, be **DENIED**.[1]

Respectfully submitted this 17th day of November, 2025, at Denver, Colorado.

BY THE COURT:

Cyrus Y. Chung
United States Magistrate Judge

---

[1] Be advised that all parties shall have fourteen days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Finally, all parties must consult and comply with the District Judge's practice standards for any specific requirements concerning the filing and briefing of objections.